IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2002 Session

## STATE OF TENNESSEE v. WILLIAM R. MCLEOD, JR.

**Appeal from the Circuit Court for Williamson County**
**No. I-301-95    Donald P. Harris, Judge**

_____

**No. M2001-03070-CCA-R3-CD - Filed September 13, 2002**

_____

The defendant, William R. McLeod, Jr., pled guilty in the Williamson County Circuit Court to two counts of aggravated sexual battery, a Class B felony. Pursuant to the plea agreement, the defendant received an eight-year sentence for each conviction with the issue of concurrent or consecutive sentencing to be decided by the trial court. After a sentencing hearing, the trial court ordered that the defendant serve his sentences consecutively for an effective sentence of sixteen years in the Tennessee Department of Correction. The defendant appeals, claiming that the trial court erred in ordering consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and J. CURWOOD WITT, JR., JJ., joined.

Judson W. Phillips, Franklin, Tennessee, for the appellant, William R. McLeod, Jr.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sharon T. Guffee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's sexual abuse of his daughter. At the sentencing hearing, Detective Sharon Lambert of the Williamson County Sheriff's Department testified that on February 26, 2001, she went to Moore Elementary School to interview the ten-year-old victim. She said the victim, who was in the fourth grade, told her the following: The defendant began sexually abusing the victim when she was in the second grade. At first, the abuse started with the defendant grabbing the victim's hand and making her rub his penis over his clothes. Later, the defendant made up a game in which the defendant would grab at the victim's crotch, and if he touched it, the defendant would get to lick or bite the victim's vagina. The abuse often occurred before the victim went to swimming practice and while she was wearing a bathing suit. The defendant would push the bathing

suit aside and lick the victim's breasts and vagina. The victim said that during the abuse, it felt like a tongue was going inside of her. When the victim would yell, kick, and tell the defendant to stop, the defendant would tell her to be quiet and that he was not hurting her. According to the victim, the defendant performed oral sex on her about twenty times. The defendant also exposed his penis to the victim and forced her to watch him masturbate.

Detective Lambert testified that the victim told her that the defendant said he was going to stick his penis inside of her when she got older. When the victim threatened to tell her stepmother about the abuse, the defendant told her not to threaten him and that he would be taken away from her if she revealed the abuse to anyone. Detective Lambert said the victim was confused and worried about what was going to happen to the defendant. The victim also was afraid that the defendant was going to be mad at her for revealing the abuse.

Detective Lambert interviewed the defendant. Although the defendant denied touching the victim at first, he then said that over a three to four month period, he masturbated in front of the victim once and touched her or performed oral sex on her two or three times.

Ellen Anderson, the school counselor at Moore Elementary School, testified that on February 26, 2001, the victim told her, "My daddy is touching me." According to Ms. Anderson, the victim told her that the defendant liked to play games and that he licked and bit the victim's breasts and vagina. The victim also told her that the defendant tried to make the victim perform oral sex on him. The victim went back and forth between being worried about the defendant and being angry with him for the abuse.

Ms. Anderson testified that the victim remembered the abuse happening during the victim's second grade year. Ms. Anderson noted that when the victim was in the third grade, the victim began having problems paying attention in school. After the victim revealed the abuse to Ms. Anderson, the victim explained that she had not been able to pay attention in school because she was "always thinking about what was going to happen with my dad."

Martha Answorth, the victim's psychotherapist, testified that she first met the victim in March 2001. At the time of the sentencing hearing, she was still meeting with the victim once a week and believed that the victim would be in therapy "on and off for a long time." According to Ms. Answorth, the victim loved the defendant but had mixed feelings about him. The victim did not want the defendant to go to prison, and Ms. Answorth thought the victim would be less traumatized if the trial court ordered concurrent sentences. Ms. Answorth heard the defendant tell the victim that she did the right thing by revealing the abuse, and Ms. Answorth thought the defendant could be rehabilitated.

On cross-examination, Ms. Answorth said she believed the defendant began abusing the victim when the victim was in the second grade. She acknowledged that the defendant had been grooming the victim for sexual intercourse.

Jodie McLeod, the defendant's wife and the victim's stepmother, testified that at the time of the sentencing hearing, she and the defendant had been married for four years. On February 26, 2001, she learned that the defendant had been sexually abusing the victim. The defendant admitted the abuse to Mrs. McLeod and the police, and he was remorseful. The defendant began receiving counseling immediately and realized that he had made some horrible mistakes. On September 4, 2001, the victim met with the defendant at a counseling session. The victim was happy to see the defendant and did not want him to go to prison. The defendant pled guilty in order to prevent the victim from having to testify at trial. Mrs. McLeod thought the defendant should receive concurrent sentences because the victim would need her father when she became a teenager.

John Brogdon, an expert in the field of sex offender treatment, testified that the defendant was his patient and that he began meeting with defendant about one month after the victim revealed the abuse. Mr. Brogdon believed that the defendant had a deviant sexual arousal problem with young female children. He stated, though, that the defendant was primarily aroused by adult females and thought that the defendant would do well in a sex offender treatment program. He did not think that a sixteen-year sentence was necessary to rehabilitate the defendant. Although Mr. Brogdon did not believe that the defendant had abused any other children, he said that without treatment, the defendant would be a danger to young children. According to Mr. Brogdon, the defendant was lying if the defendant said he abused the victim only three or four months.

The then fifty-nine-year-old defendant testified that when the victim was born, she lived with her natural mother. The defendant never married the victim's mother but paid child support. The victim's mother became unable to take care of her, and when the victim was nine months old, a court gave the defendant custody. In 1997, he married his current wife, who loved the victim very much. According to the defendant, he was sorry for sexually abusing the victim and what it had done to the victim and his wife. He thought he deserved to be punished but did not believe he could outlive a sixteen-year sentence. He said that if the trial court ordered concurrent sentencing, then he would have time to get out of prison and make amends with his wife and the victim. He said that the victim was not a liar and that he was sick about what had happened to her.

On cross-examination, the defendant testified that he molested and played "games" with the victim for about one and one-half years but that he masturbated in front of the victim only one time and that he performed oral sex on the victim only three or four times over a three to four month period. During the abuse, the victim never screamed or yelled for him to stop. Although the defendant asked the victim to perform fellatio, she refused, and the defendant did not force the victim to perform oral sex on him. He acknowledged that he told the victim not to tell anyone about the abuse and that he did not seek treatment until after the victim disclosed that he was sexually abusing her.

The defendant's presentence report was introduced into evidence. According to the report, the defendant was a high school graduate and had some college education. He reported being in fair physical health and suffering from diabetes, high blood pressure, high cholesterol, and back problems. He said that he did not use illegal drugs but that he was attending Alcoholics Anonymous

for alcohol abuse. The report shows that the defendant had three prior convictions for driving under the influence (DUI) and that he spent two years in the United States Army. The report reflects that the defendant had been the president of his own business, Entree Personnel, since 1993. In a psychosexual evaluation that is attached to the presentence report, the defendant described his father as an alcoholic, who sexually abused the defendant's sisters and physically abused the defendant. The evaluation provides that although the defendant admitted to sexually abusing the victim, "he tends to minimize and rationalize his actions, which is typical for individuals with his offense who have not participated in intensive treatment." The report shows that on the Child Molester Scale, the defendant "endorsed some sexually deviant beliefs."

At the end of the hearing, the trial court found that the defendant's offenses were aggravated given his relationship to the victim, the time span of his undetected sexual offenses, and the extent of the residual mental damage to the victim. It determined that these aggravating circumstances weighed against concurrent sentencing and ordered that the defendant serve his sentences consecutively.

The defendant claims that the trial court erred by ordering consecutive sentencing. Essentially, he claims that the evidence does not support a sixteen-year sentence. In support of his argument, he points to his age, military service, voluntary treatment, potential for rehabilitation, and the fact that he pled guilty in order to save the victim from having to testify at a trial. More importantly, he claims, is the fact that the victim wants him to come home. The defendant also contends that the trial court is not entitled to a presumption of correctness because it relied on Tenn. Code Ann. § 40-35-115(b)(5) "without reference to any other sentencing consideration." The state claims that the trial court properly ordered consecutive sentencing. We agree with the state.

When a defendant appeals the length, range, or manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. Under Tenn. Code Ann. § 40-35-115(b)(5), consecutive sentences may be ordered if the trial court finds by a preponderance of the evidence that multiple offenses of sexual abuse of a minor occurred and were aggravated by the relationship between the defendant and the victim, the time span of the undetected sexual activity, the nature and scope of the sexual acts, and the extent of the resulting damage to the victim. See State v. Taylor, 739 S.W.2d 227, 230 (Tenn. 1987).

Initially, we note that any evidence presented at the guilty plea hearing should be considered in determining the appropriate sentence. See Tenn. Code Ann.§ 40-35-210(b)(1). However, the defendant has failed to include in the record on appeal a transcript of the guilty plea hearing relating

to his conviction. It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. T.R.A.P. 24. This court has repeatedly held that failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a meaningful <u>de novo</u> review of the sentence. Absent the guilty plea hearing, in which facts are presented, we may presume that the trial court was justified in ordering consecutive sentencing. <u>See, e.g.</u>, <u>State v. Keen</u>, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). In any event, the record before us supports the trial court's determination.

The defendant was convicted of two offenses involving sexual abuse of a minor. The record reflects that aggravating circumstances were present in this case. The defendant sexually abused his daughter for at least one and one-half years, and Martha Answorth testified that the victim will need therapy on and off for a long time. The trial court properly imposed consecutive sentences.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE